# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| JAMES M. McPHERSON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 05-3145-CV-S-FJG |
| | ) |
| O'REILLY AUTOMOTIVE, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Currently pending before the Court is defendant's Motion for Summary Judgment (Doc. # 30).

### I. BACKGROUND

Plaintiff began working for defendant in 1986 in a counter sales position. He was later promoted to the position of Assistant Manager at one of defendant's stores. In 1990, plaintiff was promoted to the position of Territory Sales Manager. This position involved selling to and servicing wholesale customers, as well as setting up sales seminars and classes. Plaintiff's territory included seven or eight stores, ranging from Independence, Missouri to Lee's Summit to Pleasant Hill to Harrisonville. Plaintiff's position required him to drive to the different stores in his territory. On September 20, 2001, plaintiff injured his back during a customer appreciation day event. He completed a workers' compensation report of injury. Plaintiff did not seek medical attention for his injury until November 13, 2001. Plaintiff continued to work and see a doctor through the end of 2001. On January 7, 2002, an MRI of plaintiff's spine was ordered as well as a series of lumbar epidurals. Plaintiff was also placed on pain medication which carried a

restriction against driving. During the month of January plaintiff was also admitted to the hospital for a series of temporary conditions which were unrelated to his back injury. On January 14, 2002, plaintiff was placed on a medical leave of absence. On February 8, 2002, plaintiff received his first epidural and his physician stated that he was not to return to work until medically released. In February 2002, plaintiff was seen by his physician who excused him from work through March 15, 2002. In March 2002, plaintiff was referred to a surgeon for a consult. On March 29, 2002, plaintiff saw the surgeon who released him to return to work with several restrictions and an explicit "no driving" restriction. On April 8, 2002, twelve weeks after his medical leave of absence began, defendant placed plaintiff on workers compensation leave. On April 21, 2002 defendant reassigned plaintiff's sales territory to other Territory Sales Managers and promoted an employee named Todd Finley to a TSM position. Plaintiff underwent back surgery on May 22, 2002. He was not released to return to work until July 22, 2002, with the following restrictions: no prolonged standing or walking, no climbing, bending, stooping and a 10 pound lifting restriction. Plaintiff continued to undergo work hardening and physical therapy over the next two months. On August 7, 2002, plaintiff's physician lowered his restrictions to: no prolonged standing or walking, no repetitive bending, stooping, and a 25 pound lifting restriction. On September 3, 2002, plaintiff's restrictions were again lowered to no prolonged standing or walking, ability to sit as needed, and a lifting restriction of 10-20 pounds and 50 pounds from knee level. On September 27, 2002, a Functional Capacity Evaluation was conducted by an occupational therapist which concluded that plaintiff could lift 50 - 60 pounds and engage in climbing, bending, kneeling and stooping occasionally (less than 2.5 hours

per day), and that he could push and pull up to 100 pounds, stand, walk, reach and grasp frequently. The Functional Capacity Evaluation indicated that plaintiff was able to function in the heavy work classification. On October 8, 2002, plaintiff's physician gave plaintiff the following permanent work restrictions: no prolonged standing or sitting, no repetitive bending, stooping, and a lifting restriction of 50 - 60 pounds occasionally. After receiving the Functional Capacity Evaluation and his permanent restrictions, defendant offered plaintiff a position as Installer Service Specialist, which was similar to his previous position and appeared to be compatible with plaintiff's restrictions. On October 21, 2002, plaintiff's physician wrote a letter stating that he would not release plaintiff to return to work as an Installer Service Specialist because of the physical demands of the job. After receiving the letter from plaintiff's physician, defendant's benefit manager spoke with plaintiff and explained that his previous position had been filled and that there were no available positions that matched his restrictions. On November 11, 2002, defendant sent plaintiff a termination letter. The letter stated in part:

> We received a letter from your physician dated October 21, 2002 that further clarified your permanent work limitations. After review of the job description, your physician's professional opinion is that you are not able to perform the essential functions of the Installer Service Specialist position.
>
> Considering the information provided by your physician, we do not have a position open at this time for which you qualify and can perform the essential job functions. Therefore, your employment with O'Reilly is separated effective today, November 11, 2002.

On November 26, 2002, defendant completed a "Termination Report" in which an "x" was placed in the box next to the typed term "Disability-Permanent and cannot return

to work."  Next to the "x" and the typed term on this form, the benefit's director wrote, "Exhausted FMLA/Permanent restrictions/ w/c injury."

In March 2003, plaintiff contacted the Full Employment Council, which referred him to the Missouri Division of Vocational Rehabilitation to assist him in obtaining suitable employment.  On May 13, 2003, plaintiff signed an Application for Services which authorized the Division of Vocational Rehabilitation to release and utilize information relative to his situation.  The Missouri Department of Rehabilitation referred plaintiff to one of its contractors, Jewish Vocational Services in July 2003.  Plaintiff's counselor was Colleen Prewett.  On September 11, 2003, Ms. Prewett called defendant to verify plaintiff's employment information and was told that plaintiff's final position was that of Territory Sales Manager, he was only in this position for a short period of time and he was no longer employed due to a permanent disability.

On October 28, 2003, plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission.  In his charge of discrimination, plaintiff identified the date of the termination letter (November 11, 2002) as the earliest and latest date of alleged discrimination against him.  In his charge of discrimination, plaintiff alleged that he was terminated because defendant "regarded me as disabled, in violation of the Americans with Disabilities Act, and in retaliation for my opposition to acts made unlawful under Title VII of the Civil Rights Act of 1964."

**II. STANDARD**

4

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

### III. DISCUSSION

**A. Count I - ADA Claim - Regarded As Disabled**

In Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1044 (8th Cir. 2005), the Court noted that:

> In the absence of evidence of direct discrimination, ADA claims are evaluated by the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, [plaintiff] must establish a prima facie case of discrimination: an ADA- qualifying disability; qualifications to

5

perform the essential functions of her position with or without a reasonable
accommodation; and an adverse action due to her disability. Id. at 802-04;
see also Kincaid v. City of Omaha, 378 F.3d 799, 804 (8th Cir. 2004).
Once [plaintiff] makes a prima facie case, [defendant] must proffer a
legitimate, nondiscriminatory reason for the adverse employment action.
See McDonnell Douglas, 411 at 802.  If [defendant] proffers such a
reason, [plaintiff] must show that it is a pretext.

In order for plaintiff to establish a prima facie case of discrimination, he must first show that he was disabled as defined by the statute. The statutory definition of disability is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual. . . ." 42 U.S.C. § 12102(2)(A).  Major Life Activities are defined as "caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working, 29 C.F.R. § 1630.2(I), as well as sitting, standing, lifting, and reaching."  Maziarka v. Mills Fleet Farm, Inc., 245 F.3d 675, 679 (8th Cir. 2001), citing, Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 948 (8th Cir. 1999).

> To be substantially limited in the life activity of working, a plaintiff must be
> 'significantly restricted in the ability to perform either a class of jobs or a
> broad range of jobs in various classes as compared to the average person
> having comparable training, skills and abilities.' 29 C.F.R. § 1630.2(j)(3)(I).
> Inability to perform one particular job does not constitute a substantial
> limitation on working. Id. A plaintiff must show that because of his
> impairment he has suffered a significant reduction in meaningful
> employment opportunities. Webb v.  Garelick Mfg. Co., 94 F.3d 484, 488
> (8th Cir. 1996).

Maziarka, 245 F.3d at 679.

Plaintiff alleges that defendant regarded him as disabled.  As the Court noted in Epps v. City of Pine Lawn, 353 F.3d 588 (8th Cir. 2003):

> In "regarded as" actions, the plaintiff must show that the employer or
> potential employer entertain[ed] misperceptions about the individual - it

6

> must [have] believe[d] either that one ha[d] a substantially limiting
> impairment that one [did] not have or that one ha[d] a substantially limiting
> impairment when, in fact, the impairment [was] not so limiting.

Id. at 592 (internal citations and quotations omitted).

In the instant case, defendant argues that summary judgment should be granted on plaintiff's ADA regarded as claim for four reasons: 1) it is untimely; 2) plaintiff failed to timely file his designation of discriminatory incidents; 3) there is no evidence that defendant regarded plaintiff as disabled and 4) plaintiff cannot show that there was a job that matched his restrictions.

### 1. Timeliness

Defendant argues that plaintiff's claim is untimely because he did not file his charge of discrimination with the EEOC until October 28, 2003, which was 350 days after defendant's November 11, 2002 letter which terminated him. Defendant states that the time to file with the EEOC begins when the employee learns of the adverse employment action. Plaintiff responds that equitable tolling should apply because he actually completed an Intake Questionnaire on July 5, 2003. Plaintiff also states that the EEOC later issued a Notice to the Missouri Commission on Human Rights on October 27, 2003 which reflects that the charge of employment discrimination was initially received by the EEOC on July 11, 2003. Plaintiff states that the EEOC should have been aware that November 11, 2002 was the date on which the 300 day period began to run and he should not be held responsible for the EEOC's mistake. Plaintiff argues that where the EEOC commits some act which prevents a party from filing a charge of discrimination, then the time to file is tolled or waived under the principles of

7

tolling and waiver.

In McKee v. McDonnell Douglas Technical Services Co., Inc., 700 F.2d 260 (5th Cir. 1983), the Court stated:

> In Zipes v. Trans World Airlines, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court held that a federal court is not deprived of subject-matter jurisdiction over a Title VII case simply because a plaintiff fails timely to file a charge with the EEOC. The Court held that the time requirement is in the nature of a limitation period, subject to waiver, estoppel, and equitable tolling.

Id. at 263. Additionally, in Washington v. Milton Bradley Company, 340 F.Supp.2d 69 (D.Mass. Oct. 8, 2004), the Court stated:

> Other jurisdictions have also recognized "agency error" as a justification for equitable tolling. See e.g., Wilson v. St. Louis S.F.R. Co., 673 F.2d 1152, 1153 (10th Cir. 1982)(applying equitable tolling where EEOC failed to inform plaintiff how to preserve his Title VII rights); Cody v. Southwest Forest Indus., C.A. No. 86-C-3051, 1987 WL 5414, at *3 (N.D.Ill. Jan. 15, 1987)(applying equitable tolling where EEOC misplaced plaintiff's file and mistakenly reassured her to the contrary). See also, McKee v. McDonnell Douglas Tech. Servs. Co., 700 F.2d 260, 264 (5th Cir. 1983)("[T]he complainant is not to be prejudiced by the EEOC's failure to fulfill its duty.").

Id. at 74.

In McKee the Court recognized that:

> EEOC regulations do not vest Commission officials with discretion to turn away complainants. 29 C.F.R. § 1601.6 (1981) states: "The Commission *shall* receive information concerning alleged violations of Title VII from any person. Where the information discloses that a person is entitled to file a charge with the Commission, the appropriate officer *shall* render assistance in the filing of a charge." (emphasis added). Nowhere is the Commission given discretion to refuse a valid allegation of a Title VII violation except that "[a] charge which raises a claim exclusively under section 717 of Title VII [42 U.S.C. §2000e-16 (1976)] shall not be taken and shall be referred to the appropriate agency." 29 C.F.R. § 1601.19

8

(1981).

Similarly, in Sifferman v. Board of Regents, Southeast Missouri State Univ., 250 F.Supp.2d 1139 (E.D.Mo. 2003), the Court stated:

> A charge is liberally interpreted and must include, *inter alia,* "the full name, address, and telephone number of the person making the charge" and "[a] clear and concise statement of the facts." 29 C.F.R. § 1601.12(a). Notwithstanding other provisions, a "charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Id. § 1601.12(b). . . . Once a valid charge has been filed, a simple failure by the EEOC to fulfill its statutory duties regarding the charges does not preclude a plaintiff's Title VII claim." . . . In this case, the EEOC's failure to consider [plaintiff's] Intake Questionnaire as a charge of discrimination does not affect its validity. [Plaintiff] should not be penalized for the EEOC's statutory inaction regarding his charge.

Id. at 1143.

In the instant case, it appears from plaintiff's Intake Questionnaire that he contacted the EEOC on July 5, 2003. This would have been within the 300 day time limitation. It is unclear why plaintiff's Charge was not actually filed until October 27, 2003. However, as plaintiff took action within the 300 day time period to notify the EEOC and provided them with a written statement describing his allegations, the Court does not find that plaintiff's charge was untimely.

**2. Regarded As Disabled**

Defendant argues that plaintiff cannot show that he was disabled as defined by the statute, because the Functional Capacity Evaluation showed that plaintiff was capable of performing work in the heavy category, capable of lifting over 50 pounds occasionally, between 25 and 50 pounds frequently and walking two miles a day.

9

Defendant states that it waited until plaintiff reached maximum medical improvement before offering him an opportunity to return to work in a position that was consistent with his restrictions. Plaintiff however advised his physician, Dr. Sean Jackson, that he had concerns that the Installer Services Specialist position exceeded Dr. Jackson's restrictions. Dr. Jackson stated that the restrictions that he placed on plaintiff included "no prolonged standing, no repetitive bending or stooping and although it was proven through an ECF that [plaintiff] was able to lift 50 or 60 pounds, this was only on a one-time basis and certainly I do not feel he would be able to perform this on a regular basis, but only to perform this on a rare, if at best, occasional basis." Dr. Jackson continued that "it would be my impression that the current job description is not appropriate for Mr. McPherson. It would be my opinion that he is at high risk for sustaining a recurrent injury." (October 21, 2002 letter from Dr. Sean Jackson).

Defendant also argues that the notation "Disability - Permanent and cannot return to work" on the Termination Report does not show that defendant regarded plaintiff as disabled. Rather, defendant states that this was put on plaintiff's termination report because he had exhausted his FMLA leave and because his physician had not released him for the job which defendant had offered to him. Defendant states that plaintiff was terminated because of his work restrictions and because there was no job available that he was qualified to perform.

Plaintiff argues in opposition that defendant offered plaintiff a job which it knew plaintiff could not perform. Plaintiff states that the physical requirements of the Installer Services Specialist position exceeded the physical requirements of plaintiff's former

10

position as a Territory Sales Manager. Plaintiff states that defendant had positions available, such as store manager and assistant store manager, which met his physical restrictions. However, plaintiff did not offer any evidence regarding these positions.

As noted above, in order to establish a prima facie showing of disability, plaintiff must show that he has a disability as defined by the ADA. In a "regarded as disabled" claim, plaintiff must either show: 1) defendant believed that he had a substantially limiting impairment that he did not have or 2) defendant believed that he had a substantially limiting impairment when, in fact, the impairment was not so limiting. In the instant case, plaintiff does not dispute that he had several physical restrictions and limitations. He also does not argue that defendant believed the restrictions were more severe than they actually were. Rather, it is plaintiff who is arguing that he cannot perform the essential job duties of the Installer Services Specialist. Plaintiff states that he could perform the duties of his previous job - Territory Sales Manager or Store Manager or Assistant Store Manager. However, these are not jobs which defendant had available at the time. As the Court noted in Breitkreutz v. Cambrex Charles City, Inc., 450 F.3d 780 (8th Cir. 2006), "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Id. at 784 (internal quotations omitted). In Epps v. City of Pine Lawn, 353 F.3d 588, the City determined that the plaintiff could not perform the particular job of being a police officer. However, the Court concluded that this was insufficient to establish either an ADA or an MHRA claim. The Court stated:

> There is a distinction between being regarded as an individual unqualified for a particular job because of a limiting physical impairment and being

11

> regarded as 'disabled' within the meaning of the ADA. . . . Accordingly, an
> employer is free to decide that . . .some limiting, but not substantially
> limiting, impairments make individuals less than ideally suited for a job.

Id. at 592 (internal citations and quotations omitted).

In the instant case, the Court finds that plaintiff has failed to establish a prima facie case because he has not shown that the defendant regarded him as disabled under the ADA. Rather, the defendant simply determined that based on his documented physical restrictions, plaintiff could not fulfill the requirements of the position which was available at the time. Accordingly, the Court hereby **GRANTS** defendant's Motion for Summary Judgment on Count I.

**B. Count II - Disclosure of Confidential Medical Information**

Defendant argues that the disclosure of confidential medical information did not violate the ADA because the vocational counselor to whom the disclosure was made was authorized to receive medical information regarding plaintiff. Defendant also argues that there is no evidence that plaintiff sustained any tangible injury as a result of the alleged disclosure.

Plaintiff argues that the focus is not on whether the person who received the information was authorized to receive it, but rather whether the person who disclosed the information, *knew* that the recipient was authorized. Plaintiff points out that Ms. Prewett testified that she may or may not have identified herself as being with Jewish Vocational Services and working with plaintiff to help him gain employment. Plaintiff states that he has circumstantial evidence that he was harmed by this disclosure

because although he was granted numerous interviews with prospective employers, he was never hired. He states that in particular Champion Chemicals was impressed with his record, but they wanted to check his references. Plaintiff states that he called them back several times, but they told plaintiff they had hired another candidate. Plaintiff argues that this circumstantial evidence establishes that he sustained a "tangible injury" in the form of an adverse employment action.

The Court does not agree. The only evidence that plaintiff has is that defendant disclosed medical information to Ms. Prewett, his vocational counselor. Plaintiff has no evidence showing or establishing that disclosures were made to potential employers with whom he interviewed. Rather, plaintiff is simply speculating that this may be the case. In Cosette v. Minnesota Power & Light, 188 F.3d 964 (8th Cir. 1999), the plaintiff knew that her employer had disclosed information regarding her back injury and lifting restriction to the Postal Service, with whom she was seeking employment. The Eighth Circuit found that there was disputed evidence because a letter carrier told the plaintiff that the evaluation from her former employer had sunk her evaluation. In the instant case, plaintiff has no such evidence, he has instead only shown that some information was disclosed to his vocational counselor, who was authorized to call and request this information. In his deposition plaintiff testified:

Q. Has anybody told you that, in other words, anybody from NAPA or CarQuest or any place told you, Hey, Mike, we checked with O'Reilly and they said you're disabled or they said anything negative about you?
A. I didn't ask.
Q. Okay. And no one's told you that?
A. No.

13

(Plaintiff's Depo. p. 57).

Other than his own speculation, he cannot show that any disclosures were made to potential employers or that he suffered any negative consequences as a result. Accordingly, the Court hereby **GRANTS** defendant's Motion for Summary Judgment on Count II.

**C. Count III - Retaliation**

In Count III, plaintiff alleges that he was terminated as a result of his complaints regarding defendant's discriminatory practices. Defendant argues that summary judgment should be granted on this claim because it is: 1) untimely; 2) plaintiff did not file a designation of discriminatory incidents and 3) there is no evidence to support a causal connection between plaintiff's alleged protected activity and his termination.

Plaintiff argues in opposition that equitable tolling applies to this claim as well as Count I. As to the designation of discriminatory incidents, plaintiff notes that he has requested leave to file this document out of time, and that defendant has not suffered any prejudice as a result, because defendant was aware through discovery of everything contained in plaintiff's designation. With regard to the causal connection, plaintiff states that he complained only a matter of months before his last day on the job, which was in January 2002. Plaintiff states that it makes no difference that defendant did not actually terminate his employment until November 2003, because defendant could have simply not chosen to fire him while he was on FMLA or Workers' Compensation leave.

In <u>Van Orden v. Wells Fargo Home Mortgage, Inc.</u>, No. 4:04CV00558-JEG, 2006 WL 2138357 (S.D.Iowa Aug. 1, 2006), the Court stated,

> There are three elements to a prima facie retaliation case. The plaintiff must demonstrate that he or she took part in protected conduct, that he or she was subjected to an adverse employment action, and that there exists a causal nexus between the protected conduct and the adverse action. . . . The plaintiff's burden at the prima facie case stage of the analysis is not onerous, and a minimal evidentiary showing will satisfy this burden of production. . . . Still, there must be some showing beyond conclusory allegations.

<u>Id</u>. at *7 (internal citations and quotations omitted).

Plaintiff alleges that employees complained to him and that he then relayed this to regional managers. However, plaintiff was vague in his recollections as to when he complained of these comments. Plaintiff testified in his deposition:

Q. As far as having any conversation with Steve Pope about things that you felt Buddy Ball said or did, you don't recall if that was - could it have been as early as 1995?
A. I don't remember the date.
Q. Okay. Could it have been as early as '95?
A. It was more than one conversation over the years.
Q. Well, that's –
A. So I don't remember the exact date. And I just – I can't help you. I don't remember the exact date.

(McPherson Depo. p. 68).

Q. Did you ever tell Steve Pope or anybody in human resources –
A. No.
Q. – that there was –
A. I told my direct superiors - or not my direct superiors, but I told people that I assumed, by telling a regional manager in Kansas City, that part of his job would be to contact human resources and take care of that. Or contact that store manager and talk to her.

15

(McPherson Depo. p. 80).

"Opposing or complaining of discriminatory treatment is a protected activity." Garrison v. Kemin Industries, Inc., No. 4:03-CV-40409-JEG, 2005 WL 852533 (S.D.Iowa, Apr.11, 2005). The Court will assume that plaintiff can meet the first prong of the prima facie test, that he engaged in protected conduct. However, the Court finds that plaintiff has failed to show that there was any nexus between his complaints and his termination. Additionally, the length of time also weakens any inference that there was a connection between the two events. Plaintiff cannot even specifically recall when he made his complaints. Accordingly, the Court finds that plaintiff has failed to establish a prima facie case of retaliation because he cannot show that there was a causal connection between the protected activity and his termination. Therefore, the Court **GRANTS** defendant's Motion for Summary Judgment on Count III - Retaliation Claim.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** defendant's Motion for Summary Judgment (Doc. # 30).


Date:  September 22, 2006             **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                 Fernando J. Gaitan, Jr.
                                      United States District Judge